### SAMUEL JAQUITH *vs.* THOMAS RICHARDSON.

By the true construction of the Rev. Sts. *c.* 51, § 1 when that part of a road which is wrought for travelling is hidden by snow, and a path is beaten and travelled on the side of the wrought part, persons meeting on such beaten and travelled path are required to drive their vehicles to the right of the middle of such path.

IN an action of trespass, the plaintiff alleged that the defendant, at Stoneham, on the 24th of March 1843, made an assault upon him, and with a certain stage or sleigh drawn by four horses, did direct and guide the same horses against the sleigh of the plaintiff, in which he was then and there sitting, and did drive said horses against the plaintiff's said sleigh, and overturned the same, and greatly injured the plaintiff, &c.  *Merrick,* J. before whom the trial was had, in the court of common pleas, reported the case as follows :

" The plaintiff introduced evidence tending to show that, on said 24th of March, he was riding from Reading to Medford in his sleigh ; that near the village of Stoneham he met the defendant, who was driving a stage-coach, containing fourteen passengers ; that he seasonably turned and drove his sleigh wholly out of the beaten and travelled part of the road, and stopped there till said stage came up ; that the defendant continued to drive along in the said beaten and travelled track without turning at

all to the right, and, not being at the right of the centre thereof so drove his stage, that the end of the whippletree of his fore horses struck the plaintiff's sleigh, doing a slight damage; that the sleigh was not upset, nor the plaintiff at all injured, but that the sleigh was forcibly carried back, eight or ten feet, bringing up the back of it against a horse standing in another sleigh directly behind the plaintiff: That the plaintiff's sleigh was forced with violence in contact with the stage, when the defendant stopped and disengaged it; that immediately upon the collision, the plaintiff's horse struggled and leaped with great violence, putting the plaintiff in immediate danger; that there was no drift of snow or other obstruction which would have prevented the defendant from easily and conveniently turning his horses and coach to the right of the centre of said beaten and travelled track; that the collision took place at the bottom of a slight hill, at a place from which the plaintiff could be plainly seen by the defendant, on his stage, at a distance of ten or twelve rods.

" The defendant offered evidence tending to show that, as he approached the top of the hill, he was driving at a moderate pace; that as he descended the hill, he drove more slowly, not exceeding the rate of five miles an hour; that all the way from the top of the hill to the place where the collision took place, there was a drift or bank of snow, on the defendant's right side, coming quite up to the said centre of said beaten and travelled track; that he drove as near this bank as it was safe for him to do; and that, if he had turned more to the right, his coach would have been upset, and the passengers in it exposed to great injury; and that there was no depth of snow, or other obstruction, to prevent the plaintiff from turning still farther to his right.

" All the testimony on both sides proved that the beaten and travelled track, at the place where the collision occurred, was on the right of the centre of that part of the highway which was wrought and prepared for travel when there was no snow on the ground; and that the stage, at the moment of the collision, was in fact on the right of the centre of said wrought part of the road.

" The presiding judge instructed the jury that it was the duty of towns to cause public highways to be made safe and convenient for travelling, when the ground was incumbered with snow ; and that if the ground was, at this time, so covered with snow that the said wrought part of the way could not be seen or discovered, the beaten or travelled track in the snow, which was made by the public travel, and suffered by the officers and inhabitants of the town so to be made and remain for the public use, was the road to the right of the centre of which the defendant was bound seasonably to have turned and driven his horses and coach ; that it was his duty to have done so on meeting the plaintiff, unless the obstruction by the bank or drift was such as to have prevented his doing so with safety to his coach and the passengers in it; but if it was so obstructed, he was not bound to turn to the right of the centre of said beaten or travelled track, but, the plaintiff having driven his sleigh tc his right, entirely out of the centre of the beaten or travelled track, it was the duty of the defendant to have driven his horses and coach with so much care, skill and moderation, as would have afforded reasonable security to the plaintiff, in his passage by him ; and that he was liable, in this action, for damages, it he did not seasonably turn and drive his horses and coach to the right of the centre of said beaten and travelled track, if he could have done so with safety ; or if, being unable to do so, he did not drive with such due care, skill and moderation, as would have offered reasonable security to the plaintifl, in his passage by him with his coach and horses."

A verdict was returned for the plaintiff, and the defendant alleged exceptions to the instructions given to the jury.

*Nelson,* for the defendant.

*Willey,* for the plaintiff.

HUBBARD, J. By *St.* 1820, *c.* 65, § 1, it was enacted, " that in all cases of persons meeting each other on any bridge, turnpike, or other road, travelling with carriages, wagons, carts, sleds, sleighs, or other vehicle, the persons so meeting shall seasonably turn, drive, and convey their carriages, wagons," &c., " to *the right of th centre* of the travelled part of such bridge,

turnpike, or road, so as to enable each other's carriages, wagons," &c. " *to pass each other* without interference or interruption." This statute is reënacted in the Rev. Sts. *c.* 51, § 1. And by the Rev. Sts. *c.* 25, § 3, it is also the duty of surveyors of highways, when any such way is incumbered with snow, forthwith to " cause the same to be removed, or so trodden down, as to make the way safe and convenient."

In the present case, the defendant contends that he was " to the right of the centre " of the wrought part of the road, and consequently was not guilty of violating the law of the road, for the breach of which the plaintiff brings his suit; and he relies on the case of *Clark* v. *The Commonwealth,* 4 Pick. 125, to support his position. That case originated in a prosecution against Clark, for not turning his wagon to the right of the centre of the travelled part of the road in Rutland; and it came before the court on a petition for a writ of *certiorari* to the court of common pleas. In support of the petition, on the evidence offered to sustain it, it was contended that by the travelled part of the road was meant the part wrought and made for travel. And the court, in giving their opinion, say, that by " the travelled part " was intended that part which is usually wrought for travelling; and that a traveller, " if he turns to the right of the centre of the wrought part, *so that there is room on the wrought part for the other traveller to pass,*" does not incur the statute penalty. We have no doubt of the correctness of the ruling in that case, and that the revised statutes are to receive a similar construction. But the circumstances there considered are different from those in the case at bar, and they do not control it. We are now called upon to apply the law, which is a most beneficial one, and conducive to the safety and convenience of all the inhabitants of the Commonwealth, to a state of the public road, when, from the season of the year, and the quantity of snow on the ground, the wrought path was obscured from the eye, and the travelled and beaten path was on the right of the centre of the wrought path. And here we cannot doubt but that the path then beaten and travelled by those passing and repassing on the way, with their sleds and sleighs, was

one of those roads contemplated by the framers of the statute, and within its spirit and purview, and that the wrought part is not, for the time being, the travelled path to which the law of the road is restricted ; but that the law is as well applicable to the path, as actually travelled upon the snow, as it is to the wrought part in different seasons of the year.    That the statute is not limited to highways or town ways, is established by the case of *Commonwealth* v. *Gammons*, 23 Pick. 201, where the law was fully considered, and was held applicable to collisions on all roads travelled ; the intent of the law being to extend protection to all travellers in passing over ways, whether public or private.

On the view thus taken of the statute, we are satisfied with the ruling of the court below, which, we think, was guarded with careful preciseness.

*Exceptions overruled.*